

08 CV 5447

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RETTINO INSURANCE AGENCY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BLACKSTONE GROUP L.P., STEPHEN A. SCHWARZMAN and MICHAEL A. PUGLISI,<br><br>Defendants. | Civil Action No. 08 CV 5447 (McMahon) ECF Case<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Rettino Insurance Agency ("Plaintiff"), by its undersigned counsel, makes the following allegations, except as to allegations specifically pertaining to Plaintiff and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel, which investigation included analysis of publicly available news articles and reports, public filings, securities analyst reports and advisories about The Blackstone Group L.P. ("Blackstone" or the "Company"), press releases and other public statements issued by the Company, and media reports about the Company, and believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a Class consisting of all persons other than Defendants who purchased the common units (referred to hereafter as "common stock") of Blackstone pursuant and/or traceable to the Company's initial public offering on or about June 25, 2007 (the "IPO" or the "Offering") seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o.

3. This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v, and 28 U.S.C. §§ 1331 and 1337.

4. Venue is properly laid in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. § 1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District and Blackstone maintains its executive offices in this District.

5. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the New York Stock Exchange.

## PARTIES

6. Plaintiff Rettino Insurance Agency purchased Blackstone common stock, as set forth in the certification attached hereto and incorporated herein by reference, pursuant and/or traceable to the IPO, and was damaged thereby.

7. Defendant Blackstone, through its subsidiaries, provides alternative asset management and financial advisory services worldwide. Blackstone is organized as a limited liability partnership. The general partner of Blackstone is Blackstone Group Management L.L.C. ("Blackstone Group Management"). The Company's principal executive offices are located at 345 Park Avenue, New York, New York 10154.

8. (a) Defendant Stephen A. Schwarzman ("Schwarzman") was, at all relevant times, Chairman and Chief Executive Officer of Blackstone Group Management. Defendant Schwarzman signed the Registration Statement.

(b) Defendant Michael A. Puglisi ("Puglisi") was, at all relevant times, Chief Financial Officer of Blackstone Group Management. Defendant Puglisi signed the Registration Statement.

(c) Defendants Schwarzman and Puglisi are collectively referred to herein as the "Individual Defendants."

9. By reason of their management positions and their ability to make public statements in the name of Blackstone, the Individual Defendants were and are controlling persons, and had the power and influence to cause, and did cause, Blackstone to engage in the conduct complained of herein.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

10. Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of itself and all persons other than Defendants who purchased the common stock of Blackstone pursuant and/or traceable to the Company's IPO. Excluded from the Class are Defendants herein, members of the immediate family of each of the Defendants, any person, firm, trust, corporation, officer, director, or other individual or entity in which any of the Defendants, and the legal representative, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

11. The members of the Class are so numerous that joinder of all members is impracticable. Blackstone sold more than 153 million shares of common stock in the IPO. The precise number of Class members is unknown to Plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of Blackstone or its transfer agent or the underwriters to the IPO. Notice can be provided to such record owners by a combination of published notice and first-class mail,

using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

12. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

13. Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants. Plaintiff does not have any interest antagonistic to, or in conflict with, the Class.

14. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

15. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether the Prospectus and Registration Statement issued by Defendants to the investing public in connection with the IPO negligently omitted and/or misrepresented material facts about Blackstone and its business; and,

(c) the extent of injuries sustained by members of the Class and the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

16. Defendant Blackstone describes itself as "a leading global alternative asset manager and provider of financial advisory services . . . with total assets under management of approximately $113.5 billion as of March 31, 2008."

17. Prior to the IPO, Blackstone effected a reorganization of its businesses into a holding partnership structure. Blackstone is now a holding partnership and is the sole general partner of each of the partnership entities that hold Blackstone's various businesses.

18. Blackstone generates earnings through management and performance fees of its general partnership. The Company earns management fees from its limited partners for managing money in its various funds. Blackstone charges a management fee of one and a half percent on its assets under management. The Company also earns performance fees of twenty percent of the profits generated on a return on capital it invests for its limited partners.

19. Blackstone is subject to a "claw-back" of performance fees, which requires the Company to refund to its funds' limited partners any performance fees that have already been paid if the investments perform poorly.

20. On or about June 21, 2007, Blackstone filed with the U.S. Securities and Exchange Commission ("SEC") a FORM S-1/A Registration Statement (the "Registration Statement") for the IPO.

21. On or about June 25, 2007, the Prospectus with respect to the IPO (the "Prospectus"), which forms part of the Registration Statement, became effective and, including the exercise of the over-allotment, more than 153 million shares of Blackstone's common stock were sold to the public at $31 per share, thereby raising more than $4 billion.

22. The Registration Statement and Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

23. Specifically, the Registration Statement failed to disclose that certain of the Company's portfolio companies were not performing well and were of declining value, and, as a result, Blackstone's equity investment was impaired and the Company would not generate anticipated performance fees on those investments, or would have fees "clawed-back" by limited partners in its funds.

24. For example, at the time of the IPO, Blackstone's investment in FGIC Corporation ("FGIC") was performing poorly.

25. FGIC was founded in 1983 and was one of the four leading monoline financial guarantors, or "monolines." FGIC is the parent company of Financial Guaranty, its bond insurance arm. Monolines such as Financial Guaranty purport to leverage AAA financial strength rating by Moody's Investors Service ("Moody's"), Standard & Poor's Rating Services ("Standard & Poor's" ) and Fitch Ratings ("Fitch") to guarantee the timely repayment of bond principal and interest of an issuer in the event the issuer defaults, thus allowing the debt issued to get the highest possible rating. Financial Guaranty's financial guarantee is designed to protect investors in the event of securities default.

26.   Blackstone owns a twenty-three percent equity ownership interest in FGIC. The Company purchased its ownership in FGIC along with PMI Group Inc. ("PMI") and Cypress Group ("Cypress"). The consortium purchased an eighty-eight percent interest in FGIC from General Electric Co. in 2003 for $1.83 billion.

27.   Traditionally, Financial Guaranty focused mainly on conservative municipal bonds. In recent years, however, lured by larger profits and higher growth rates, Financial Guaranty began writing insurance on collateralized debt obligations ("CDOs"), including CDOs backed by subprime mortgages to higher-risk borrowers. CDOs are a type of asset-backed security and structured credit product. CDOs repackage bonds, mortgages and other assets into new securities and then use the income from the underlying debt to pay investors. CDOs are secured or backed by a pool of bonds, loans or other assets, where investors buy slices classified by varying levels of debt or credit risk.

28.   By the time of the IPO, the Company's investment in FGIC was materially impaired, as FGIC's bond insurance arm, Financial Guaranty, had significant exposure to defaults on bonds it insured due to the plunge in value of mortgage debt.

29.   Similarly, by way of further example, at the time of the IPO, Blackstone's equity investment in Freescale Semiconductor was not performing well and was materially impaired.

30.   Under applicable SEC rules and regulations governing the preparation of the Registration Statement and Prospectus, the Registration Statement was required to disclose that certain of the Company's portfolio companies were not performing well and were of declining value and, as a result, Blackstone's equity investment was impaired and the Company would not generate anticipated performance fees on those investments or would have fees "clawed-back"

by limited partners in its funds. The Registration Statement failed to contain any such disclosure.

31. In the months after the IPO, details of the problems with some of Blackstone's portfolio companies slowly began to become known to the market and, as a result, the price of Blackstone stock substantially declined.

32. On March 10, 2008, Blackstone issued a press release announcing its financial results for the full year of 2007 and the fourth quarter of 2007, the periods ending December 31, 2007. Among other things, the Company reported that it had written down its investment in FGIC by $122.9 million. For the fourth quarter, the Company reported in relevant part:

> "Total Reportable Segment Revenues declined to $366.9 million from Total Pro Forma Adjusted Reportable Revenues of $1.21 billion in the quarter ended December 31, 2006, primarily due to decreased revenues in the Corporate Private Equity and Real Estate segments. The revenue declines in the Corporate Private Equity and Real Estate segments in the fourth quarter of 2007 were mostly due to lower net appreciation of the investment portfolio as compared to the prior year, as well as a significant decrease in the value of Blackstone's portfolio investment in Financial Guaranty Insurance Company, a monoline financial guarantor."

33. At the time of the filing of this Complaint, Blackstone common stock traded in a range of approximately $17.00 to $19.00 per share, considerably less than the IPO price of $31.00 per share.

## COUNT I

### Violation of Section 11 of the Securities Act
### Against all Defendants

34. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

35. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants.

36. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

37. Blackstone is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the Registration Statement and the Prospectus.

38. As issuer of the shares, Blackstone is strictly liable to Plaintiff and the Class for the misstatements and omissions.

39. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

40. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

41. Plaintiff acquired Blackstone shares pursuant to the Registrant Statement.

42. Plaintiff and the Class have sustained damages. The value of Blackstone common stock has declined substantially subsequent to and due to Defendants' violations.

43. Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff filed this Complaint. Less than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

## COUNT II

### Violation of Section 15 of the Securities Act
### Against the Individual Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, against the Individual Defendants.

46. Each of the Individual Defendants was, during the relevant time period, a controlling person of Blackstone by virtue of his position as a director and/or senior officer of Blackstone. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Blackstone.

47. Each of the Individual Defendants was a culpable participant in the violation of Section 11 of the Securities Act alleged in Count I above, based on their having signed the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on its own behalf and on behalf of the Class, prays for judgment as follows:

    A. declaring this action to be a Plaintiff class action properly maintained pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure;

    B. awarding Plaintiff and other members of the Class damages together with interest thereon;

C.  awarding Plaintiff and other members of the Class their costs and expenses of this litigation, including attorneys' and experts' fees, and other costs and disbursements; and,

D.  awarding Plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

Dated: June 16, 2008

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

Lisa M. Pollard (*lmpollard@locklaw.com*)
One Pennsylvania Plaza
Suite 2020
New York, New York 10119
Telephone: (212) 271-8232
Facsimile: (212) 271-8258

Karen H. Riebel (*khriebel@locklaw.com*)
100 Washington Avenue South
Suite 2200
Minneapolis, Minnesota 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

*Attorneys for Plaintiff
Rettino Insurance Agency*

## PLAINTIFF CERTIFICATION

I, Nick Rettino on behalf of Rettino Insurance Agency, hereby state:

1. I have reviewed a Complaint against The Blackstone Group L.P., and certain of its officers and directors, and authorized the filing of the same or a similar complaint on my behalf.

2. I did not purchase any of The Blackstone Group L.P. securities at the direction of counsel or in order to participate in this private action.

3. I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. The following includes all of my transactions in The Blackstone Group L.P. securities:

| TRANSACTION (PURCHASE, SALE, EXCHANGE, CALL, PUT, ETC.) | TRADE DATE | PRICE | QUANTITY |
| --- | --- | --- | --- |
| Purchase | 7/5/07 | 30.60 | 100 |

5. I have filed the following civil actions as a representative party on behalf of a class under the federal securities laws during the last three years.

6. I will not accept any payment for serving as a representative party on behalf of a class except to receive my pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __10__ day of __June__, 2008.

Rettino Insurance Agency

By: _____(signature)

Nick Rettino

Its: _____(title)

Atlantic County
(county of residence)

382161-1